Cuma, per
Nott, J.
It was stated in the course of the argument that when the house, which had been sold by Frazier to Wilkins, was sold for the purpose of foreclosing the mortgage, Hall became the purchaser; that he paid the money to Frazier, knowing that Mrs Frazier. had an assignment of one of the bonds, and that he therefore made himself liable to pay her demand.
But that is ce‘rtainly travelling out of the bill, which admits the payment of the money to Mrs Frazier; for it expressly states that Frazier, “ for the purpose of making payment for the same (that is Reeve's Tavern) borrowed of the said trustee (of Mrs Frazier) the said debt, .(which was Wilkins' debt) and secured the payment thereof by a bond and mortgage of the said houses and lots so purchased.” It is, however, of but little importance ; for it would only result in the question, whether Mrs Frazier could, with the consent of her trustee, bind herself by the arrangement which was made at that time, as stated in the bill. And as that question will come up again in that part of the case which relates more particularly to Center, the opinion of the Court with regard to' him will decide the question with regard to Hall also.
Whether the money due on Wilkins' bond was actually paid to Bynum at the time the house was sold, or whether it was only considered as paid for the purpose of enabling Frazier to effect the purchase of Reeve's house, is perfectly immaterial as regards the present question. It was actually paid into the hands of the Commissioner, of which Mrs Frazier and her trustee-both had notice. She had a right therefore to demand, the money; and no person could have prevented her from receiving it. She however voluntarily agreed to lend it to her husband; upon the consideration that he *275 would substitute his bond secured by a mortgage on Reeve's house.
married woman may be considered as capabIe °/dis" nosine1 oí nro-How far a posing of property settled separate use ^p^aity" settled in this state‘
Lord Thur-°w s opimon-Lord
Hard-opi"
Lord Alvan-lyn’s.
Lord EldonV.
Court ofEry‘0sffNew
How far a married woman may be considered as having the disposition of property settled on her for her separate use is a question perhaps which is not yet finally settled in this state. The subject is so fully considered in the able opinions in the case of Ewing v. Smith, reported in 3 Desaussufe’s Reports, 417, that I shall not ; . * , . ., have. occasion to resort to any other authority. It appears from the cases there collected to be the well set- * tled doctrine in England, that a feme covert has the exclusive right to dispose of such property as is set-tied to her separate use. ■ From the time of Norton v. Turvill, 2 P. Wms, 144, which was decided1 in the year 1723, up to the case of Ellis v. Atkinson, 3 Bro. C. C. 565, decided by Lord Thurlow in the year 1792, being a period of near seventy years, the whole current of decisions is that way. Lord Harbwicke, in the case of Grigby v. Cox, 1 Ves. Sen. 517, says, “The rule the Court is, that where any thing is settled to the wife’s separate use she is considered as a feme sole, may appoint in what manner she pleases, and unless the joining her trustees is made necessary, there is no occasion for that.” There was a short period of about ten years, from the resignation of Lord Thurlow until Lord Eldon came into office, during which Lord Alvanley, then Master of the Rolls, and Lord Rosslyn seemed sed to question the correctness of those decisions, and were unwilling to consider them as authority. But Lord Eldon has since recognized their authority, and there is now no principle better established in the English Courts. The same doctrine has been recognized in the High Court of Errors and Appeals in New York, in the case of Jacques v. Methodist Episcopal Church, 17 Johns. Rep. 548. .
Ewing v. Smith.
A feme covert, with the consent of her trustee, may vest her own separate funds in any way she may think best.
Cater a>. Eve-leigh.
James «.May-rant.
Montgomery «. Eveleigh.
Fraser «. M’Pherson and Ford.
It is true that in the case of Ewing v. Smith a majority of the Chancellors held, that the decisions of the NragiisA Courts, of Equity were not of binding authority in this state. In that case it is held that a married woman, to whose separate use property is settled, has no further control over it than is conferred by the deed of settlement : and therefore a bond given by a married woman for the debt of her husband, with a view of charging her separate estate, was void. It is not my intention now to enter into a consideration of the question, because it is not necesssary to the decision of the present case. For no Court has ever gone so far as to decide that a 'feme covert could not, with the consent of her trustee, vest her own separate funds in. any manner which she might think best calculated to promote her interest. In the case of Cater v. Eveleigh, 4 Desaus. Rep. 19, it was. held, that where the husband, acting as agent for the trustees, had purchased a cotton gin for the use of the trust estate, the trust estate should be chargeable with it, although he had given his own note for it, and had been sued at law to insolvency. In the case of James v. Mayrant, 4 Desaus. Rep. 591, a similar decision was made; and this Court, during its present sitting, has supported a decree of Chancellor Dri Saussube to the same effect, in the case of Montgomery v. Eveleigh.
Now, what is the case under consideration % Wilkins’ bond was actually paid. The trustee unquestionably had a right, particularly with the consent of the cestui que trust, to lay out the money in such manner as he might think best calculated to promote her interest..
In the case of Fraser v. M’Pherson and Ford, 3 Desaus. Rep. 393, the Court recognized a right in the trustee to vest the funds of the trust estate in the purchase of negroes. And there can be no doubt but that he would have the same -power to lay it out in the purchase of houses. and lots, bank stock, or other *277 valuable property. In the present case it was thought proper to lend the money to the husband, and to have it secured by a mortgage on the house and lot in question. And there can be no doubt, that at the time it would have been thought a judicious investment. It effected a reconciliation with her husband; it furnished the best possible security for his future good behaviour; and nobody doubted at that time but that the security was ample. The house was considered at least worth $6,000, and was under no incumbrance except the mortgage to Center for $1,000, with every probability that that would be removed. The loss of Mrs Frazier therefore has not resulted from any fraud of the defendants Hall and Center, or misapplication of the funds by the trustee, but from a combination of circumstances since, for which they are not answerable, and to which it is not necessary now to recur. I am of opinion, therefore, that the complainants are not entitled to succeed on that ground.
It only remains to inquire whether the mortgage to Mrs Frazier is entitled to a preference to that of Center. It is here to be remarked, that there is no pretence for the allegation in the bill that the debt to Center was paid off and that the mortgage to Center was given for money afterwards lent to Frazier by Hall. It is now understood and admitted, that the mortgage to Center was given to secure the balance of the purchase money of the house sold by him to Frazier.
But it is contended that the contract between Center and Frazier contained separate and independent covenants. One on the part of Center to sell and convey the house and lot, and the other on the part of Frazier to pay according to the terms therein stipulated. That the covenant of Center vested an equitable title in Frazier; and that as Mrs Frazier contracted on the faith of that covenant, equity will give her a preference.
A party will ed of a prioiSt" lien unless some fraud or tiie'transa'c”1 tion.
A covenant upon a pur-instile8 uT" chase money covenant,*and the former can not be com-peiied but formance thelatter; and ^urcii^soi under such can not glveeS any lien on until he has purchase*6 money.
Second. It is contended that according to the original contract, Frazier was to pay Center at the time the titles were made. Mrs Frazier had a right therefore to suppose when she agreed to take a mortgage on the house, that it would be unincumbered; and that as Center agreed afterwards to give a credit and take a mortgage on the' house, he must be considered as having waived his right to a preference. ‘
To both those propositions it is sufficient to oppose the answer of Center, who swears positively that his mortgage was the first executed. That fact gave him a legal priority, of which the Court of Equity would not under-ta^ie to divest him," unless there had been some fraud or deception in the transaction. But there is no foundation for such a supposition, as it is apparent that the whole arrangement was made with the consent and knowledge of all the parties; which consent extended as well to the priority of the lien as to the other parts of the transaction.
But independent of the fact that Center’s mortgage was the first in the order of time, let us consider the subject on the ground of equity alone. There are natural covenants to be performed at the same time. On the one-hand, the covenantor agrees to execute titles to a house an<^ l°t 5 on °ther, the purchaser agrees to pay the purchase money or other consideration. Each was to be in consideration of the other, and neither of the parties intended to rely on the credit of the other. They were J then dependent covenants. One was not to be per-without the performance of the other. And a different construction, to use the language of Lord Kenyon, ■ a in Goodisson v. Nunn, 4 Term Rep. 764, would “out-rage common sense.” Besides, the. trustee of Mrs Frag¿er could not look upon the covenant without seeing, that Frazier had obligated himself 'to assign to Center the very bond that he had already transferred to him. And jf ¿e gave Up that bond with a view of getting the ad *279 vantage, which is not contended for, it was as great a fraud in him as the first was in Frazier. And this Court cannot lend its aid to violate the first principles of common honesty. I do not suppose however that any such thing was intended, or that' it was then supposed that such a question would ever occur. The security was then thought ample, and they were probably indifferent about the priority.
The wife aow^ofianda mortgaged for money?*1386
The second question admits of the same answer; and Mrs Frazier saw that her husband had entered into a covenant which he could not perform. ■ She had the means of affording him assistance, and voluntarily did so. She did not, as in the case of Ewing v. Smith, agree to sacrifice her separate estate to save him. But she agreed to lend him the money upon condition that it should be secured to her in the best possible manner, as was then supposed, that could be devised. An investment in negroes or bank stock would have been thought at that time more precarious. She had a deep interest therefore in bringing about the arrangement. Center was comparatively disinterested: he already had good security in his own hands, and was not disposed to let go his hold. Indeed the contract afterwards made was rather changing the form than the substance of the security.
The delivery of the titles, and the execution of the mortgage, can be considered but as one act. And there can be no principle of equity, even if shejiad not been a party to the arrangement, by which she could have come in to claim a preference. Even at law, Mrs Frazier would not have been entitled to her dower in the premises. Boyce v. Rutledge, 1 Bay, 312. So that whether we consider the question upon the ground of contract, or upon the principles of law or equity, the complainants cannot succeed.
The motion therefore must be refused.

Decree affirmed.